Oyez, oyez, oyez. All persons have in any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and the Honorable Courts. The argument in the United States v. Cannady. Mr. Stolker. Thank you, Your Honor. Good morning, may it please the court. I'm Richard Stolker having been appointed by this court to represent Germaine Cannady in this appeal. The issue that permeates all of our concerns in this case is whether there was enough evidence presented at the trial so that of multiple conspiracies as opposed to the single overarching conspiracy that the jury found Mr. Cannady guilty of. And that really from that overarching concern comes to comes our main two issues. First that there was insufficient evidence presented at trial to sustain Mr. Cannady's conviction for the single overarching conspiracy. And secondly that the court below erred in not allowing in cutting off Mr. Cannady's principal defense which was that he arguably was a conspirator with Mr. Barrett and perhaps Mr. Parker but not with all of the seven six or seven or eight other defendants in the case. As the court is aware the indictment in this case charged Mr. Cannady along with I believe eight other individuals with conspiring with one another and with Michael Barrett to sell various quantities of drugs. But what I think that was a good part of it and even though Mr. Barrett's testimony against all the defendants and certainly Mr. Cannady's was damaging it's not a strong case for the government because at least as to Cannady there was virtually no corroborating evidence. Whatever came out of Mr. Barrett's mouth was essentially that's what the government had and he was given a deal he was turned to it was turned by the spokesman. And it's interesting that there was no his name never appeared never came up in any of the wiretaps. The agents who the FBI agents. He did your honor of course that's no crime. That's not a crime to know people who are involved in other conspiracies and Mr. Cannady did these these defendants did know each other. Well I agree with that as a matter of as a statement of truth but that's not what happened because Mr. Barrett made very clear that he dealt with each basically pair of customers separately and even on the August 11th date which is the first time I believe that at the FBI's request he brought everybody together but even so they came separately. Cannady came with Parker because Cannady didn't have a driver's license. The really until that time Barrett made clear that he only dealt with one at a time one pair at a time. He did say that and the jury evidently did credit that but my point was your honor that there really wasn't anything to corroborate that. Mr. Barrett was on the stand for I think three days as to there because the government gave him a good deal in sentencing provided that he tell the truth but what that meant in this case was to implicate the all the defendants in the scheme. They were entitled to believe Mr. Barrett and they did apparently believe Mr. Barrett but despite the the nature of Mr. Barrett's testimony it's not a strong case for the government because basically that's all they had was Michael Barrett at least as far as Kennedy is concerned. From a bare legal point of view no they didn't need anything more but what they did need in this case was to allow the defense to the defense the strongest defense position was that Kennedy wasn't involved in this overarching conspiracy. He was involved arguably in a conspiracy or in a confederacy with Barrett and maybe with Parker. If a conspiracy can be read into a buyer-seller relationship fine but that doesn't make him a conspirator with everybody else. Let me offer a flawed analogy but maybe it'll help make the point. I go to Walmart and I'm buying stuff and I'm checking out there's somebody in front of me and somebody behind me and all of us are buying things and in a very real sense all of us want Walmart to succeed because we want to be able to We may even know each other but we're not confederates. I know this is a flawed example but it's it we're no more in a conspiracy than the overarching conspiracy of the government contends here where Barrett sold narcotics to A and B, to C and D, to E and F and to Kennedy but all these transactions were separate. In fact, Barrett's testimony went to the concept of an overall team. He says that Kennedy was a team player and that Kennedy was the underboss of the whole thing. Kennedy was his right-hand man. When you read portions of Barrett's testimony, it's quite detailed. It goes into how Kennedy was a buyer. He didn't choose what quantity and type of drug, what the price should be. He was the one that purchased the police scanners to avoid detection. In the recorded conversation, he indicates that he was a billionaire and that all the other co-conspirators had come but Barrett's testimony wasn't just a glancing testimony. He goes into detail as to how the conspiracy operated, who was involved, and what Kennedy's role in it was. And even the jury didn't believe him. This case of Barrett from the Berk, the jury found Barrett to be trouble with. But even so, Mr. Barrett was cross-examined extensively using the language of Kodiakos about spokes and wheels and I think if you look at the cross-examination as a whole, it reveals that Barrett was at the center of the wheel with all these spokes coming out, but there really wasn't any, what's the word I'm looking for, there wasn't a rim, there wasn't an overarching conspiracy. The conspiracy has to have only one center, but the center of the conspiracy can be comprised of more than one person, which is why Barrett preferred Kennedy. Kennedy was not involved. If I may, Your Honor, I'm sorry. It may have been some of the spokes, but Kennedy was part of that, at least according to Barrett's testimony and the Kodiakos. Kodiakos, which is the case from whence the whole spokes and wheels concept comes, has a very interesting, I think probably dictum in it, but I was taught to pay close attention to Supreme Court dicta. So I think it's irrelevant to this case. The court says that lawyers know, if others do not, that what may seem technical may embody a great tradition of justice, citing Weller, or a necessity for drawing lines somewhere between great areas of the law where one cannot always segregate the technique from the substance. And this is one of these, I think, gray areas that, I mean, you could imagine a conspiracy, my flawed example with Walmart was intended to illustrate that. I mean, you could extend this ad infinitum about what a conspiracy is, but somewhere you've got to draw the line and say that where individuals deal primarily with one person, but separately as buyers and sellers, and the cross-fertilization, if you will, is incidental and exceptional, that that's not really one conspiracy. And I also think it's important to recognize that the conspiracy effectively ended. This court said so in, I believe the case was Hacker or Hackley, that when one cannot conspire with a government agent, and at the time of August 11th, when Mr. Kennedy and the others were arrested, Michael Barrett was a government agent. He was doing the bidding of the FBI. He called everybody to come there. He told them what to do. He told them what to bring. He told Kennedy to be prepared to buy drugs, but Kennedy came without any money. But still he was there. I'm not entirely sure I understand your honor's question. But even so, the individual defendants that came to the Mandelman Mall on August 11th, when they were all summoned, did not come as a group. They didn't interact with each other. Each one came separately, and that was unusual, because in general, Mr. Barrett said he dealt with them separately, kept them separate. This was the first occasion on this record where all of them came at the same time, and they didn't know that they were all going to come at the same time. I'm not sure that really makes... I don't think the evidence indicates it. The law of conspiracy, not just in this circuit, but in many others, would follow the words of the Manifestation of Facts. Indicative of the kind of person the Manifestation of Facts is, it is, of course, elementary. One may be a member of the Conspiracy without knowing its full scope, or all of its members, without taking part in the full range of its activities, or all of the full range of its existence. And so, even if you're right, and I think we have a chosen candidate who knew a great deal of what was going on, but even if you only thought about what was going on, you would know it. Now, precedent and facts indicate that you would still be a member of the Conspiracy. It's not a hard case for you to get around. Let me answer it, Your Honor. There's a case that you may remember called United States v. Levis. It's a 1988 case that Your Honor wrote the opinion in. And in that case, Your Honor said, the question whether the evidence shows a single conspiracy or multiple conspiracies is one of fact and one that is properly the province of the jury, which wasn't permitted here. A single conspiracy exists where there is one overall agreement. Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals. And that, and I believe I've run out of my principal time, that is the contention that we have here, that there simply isn't any significant overlap between Mr. Kennedy's activities and that of the other defendants. I think there's an overlap because there are conspiracies to distribute these particular drugs throughout the Baltimore-Washington market. And the trial of Kennedy, for example, was trying to take full control and charge over the Baltimore share of that. I appreciate your hard work. If our panelists have any questions, I'll ask them to answer them. Thank you. I'd like to reserve the few minutes that I have for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Christopher Regali, and I, along with Mr. Romano, who's seated with me at council table, represent the United States in this matter. I agree with Mr. Stolker that pretty much all of the arguments raised by Mr. Kennedy turn on this central single versus multiple conspiracies question. And because, as I'll explain in a minute, the evidence, as I think the panel seemed to indicate some assent with, I think the trial evidence did establish the single conspiracy that was charged in the indictment, and because that was the case, there was no variance. Mr. Kennedy was not entitled to the multiple conspiracies instruction. He was properly joined with his co-defendants for trial, and the jury rationally convicted him on count one. I think that when you read the briefs, you get a very different picture of the facts in this case. And so given the fact that that single versus multiple conspiracies question kind of permeates all of the issues, I do want to take some time at the beginning of the argument discussing the case and some of the facts that I think are most salient to the single versus multiple conspiracies question. A single conspiracy or multiple conspiracy, and that's why we say that the multiple conspiracy instruction is a matter of district court discretion and is subject to an easy discretion standard because the trial evidence are from all these different folks. And it has a pretty good effect on what's going on. I would agree completely, Judge Wilkinson. In this case especially, the trial judge has just sat through a nine-day trial. He's seen Mr. Barrett on the stand. He's heard the calls. He's seen all the evidence. And under both Nunes and Kennedy, in order to be entitled to the multiple conspiracies instruction, there has to be evidence that the defendants were involved only in separate conspiracies unrelated to the underlying conspiracy charge in the indictment. And so I'll just bring that back to the facts of this case. What did the calls indicate that were played for both the judge and the jury? Perhaps the most telling call is the one that Your Honor mentioned, Judge Wilkinson, where Kennedy is with Dominic Parker. He's on the phone with Barrett, and Barrett says, why don't you bring Nellie and Tay up the way? And Barrett knows that Kennedy's going to come to the drug deal with Parker, but he says, bring Nellie and Tay as well. And tellingly, Kennedy's response to that directive isn't, well, who's Nellie or who's Tay? He says, okay, and you want me to bring them up the way. And he also adds, he says to Mr. Barrett, he says, I think we're going to have to take Cornell Brown's car. I think we're going to have to take Nellie's car because Nick is tied up bringing his grandmother somewhere. And then there's another call from later that day where Kennedy is very clearly with Cornell Brown. Mr. Stolker asserts in the brief that maybe Kennedy was only in a conspiracy with Parker and Barrett. But Kennedy's with Cornell Brown on this other call on August 11th. And he says to Barrett, he says, hold on a second. Cornell, Nellie Brown wants to get on the phone with you. And Nellie Brown gets on the phone. And what does he ask Mr. Barrett? He says, what's the numbers going to be? How much is it for a kilo of cocaine? The other critical evidence, Your Honors, and I probably should have emphasized this more in the brief, and this goes directly to Mr. Kennedy's knowledge of the scope of the conspiracy and the fact that he knowingly participated in it. There came a time during the course of the conspiracy, I think we talk about five shipments of drugs. I believe the fifth shipment, which would have been June 2014 prior to the drugs being seized in August 2014, that shipment was heroin. That came about because Barrett's supplier in California said to Barrett, the prices for cocaine are very high right now. I suggest you look at buying heroin. And so what does Barrett do? He goes to the core team of worker conspirators. He says to them two things. He says, one, could you sell heroin? And two, if you can, how much would you sell? Barrett testifies that Kennedy's response to those questions is not only that I'll take three, I can help you sell three kilos, but he also gives his opinion to Barrett as to the quantity that the entire group could sell. He's advising Barrett not just on what he thinks he can sell himself, but he says there's suggestion from Mr. Barrett that Parker and Brown said, oh, we want to get 10 kilos of heroin. And Jermaine Kennedy says, I think that's too much. I don't think that we can handle 10. I think we should start with five. He was an advisor to Barrett, and I think that he knows that the drugs that they're ordering aren't just for him, that they're for everyone. Barrett testified that they were like a team and that everyone was responsible for selling these drugs. The police scanner is another issue. Barrett was asked at the trial, Mr. Kennedy was arrested, and he had on his possession a police scanner. Did you ever have discussions with Mr. Kennedy about a police scanner? And Barrett says, in fact, we did. We talked about getting police scanners to evade law enforcement detection, and when Mr. Kennedy went to go buy one, he wasn't just supposed to get one for himself. He was supposed to get one for the entire group, for everybody, Mr. Barrett says. I think the suggestion, there's two points I want to touch on specifically. You know, the single versus multiple conspiracies question, Mr. Stolker mentioned Levis, there's the Johnson case. Is there a common objective here? Absolutely. The objective of the entire drug distribution conspiracy was to purchase multi-kilograms of cocaine and heroin from the West Coast, have them delivered to Maryland, and distributed in Baltimore, Washington. Was there an overlap of methods in nature? Yes, absolutely. Barrett would go to the worker conspirators. He would build up the, determine what the quantity of the order should be, place the order with his California supplier, and those drugs would come out typically in an RV. Was there the same geographic spread? Washington and Baltimore. Same overlap of actors. Nellie's working with Kennedy, Kennedy's working with Partner. They're all in it together. What is the intent of the charge? I think Mr. Stolker touches on that in the context of the Joinder argument, Judge Floyd. The question, I don't think it does anything. I think the important thing here, there is a bit of a conflation of the legal issues, I think, in Mr. Kennedy's brief. Just because Mr. Barrett was arrested on August 6th and became, for purposes of the law, a government agent, it is black letter law that just because one member of a multi-member conspiracy withdraws and becomes a government agent, it does not mean the conspiracy terminates. In fact, after August 6th, Mr. Kennedy was still in a live conspiracy with Cornell Brown, with Dominic Parker, and the others. And for the Joinder, the Rule 8 inquiry is not whether Kennedy could have conspired with Barrett after August 6th. It's whether the attempt charges were logically related to the conspiracy charge, whether they were interconnected in time, place, and manner. And, of course, they were. The attempt charges arose directly out of the center of the conspiracy. They all involved Barrett. They all involved the same shipment of drugs. They all involved the same date. And they all involved generally the same place, which was Mondawmin Mall in Baltimore. I just, that government agent rule comes up. I think there's almost no application of the government agent rule here because the question was not whether Kennedy could have conspired with Barrett after August 6th. Judge Diaz made the point that I wanted to make. Mr. Kennedy's conduct after August 6th, A, there's still a live conspiracy just because Mr. Barrett withdrew does not mean the conspiracy ends amongst the others. Mr. Kennedy's post-August 6th conduct can be used to infer the existence of a prior existing conspiracy. And Barrett testified that Kennedy got involved in February 2014 and that between February 2014 and August 2014, Kennedy was involved in multiple shipments of drugs, multiple kilograms. He's getting these drugs on consignment. All of these are indicia of a conspiratorial relationship. Unless the panel has any further questions, I'll rest with that. Thank you for your time, Your Honors.  I wanted to just, I think we've talked as much as I have time to talk regarding the conspiracy, but I wanted to just briefly touch on the count three, which is the attempt possession with intent to distribute count for which Mr. Kennedy was convicted. Barrett testified at some length that he only distributed drugs to those first come first serve. Those who came with money got drugs. He talked about one occasion where Mr. Brown came with only enough. He wanted five kilograms, but only came with enough money for four. And so he only got four. On the occasion on which Kennedy was arrested, he was told to come prepared to buy drugs, but he didn't. He came with no money or virtually no money. If Barrett's testimony is credited, he would not have given or sold any drugs to Kennedy. Kennedy could not have attempted to buy drugs on that date because he didn't bring the essential ingredient, money. So I think that there's an absence of evidence sufficient to convict Mr. Kennedy. Excuse me on count three of the indictment. The panel has no other questions. I would ask the court to consider the arguments and the, and the arguments in our brief and reply brief and reverse Mr. Kennedy's convictions. And I thank you for attention to this. Thank you. Thank you.
judges: J. Harvie Wilkinson III, Albert Diaz, Henry F. Floyd